FILED
CLERK, U.S. DISTRICT COURT
AUG 1 4 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH BANCROFT, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TRIZECHAHN CORPORATION, et al.,<br><br>　　　　　Defendants.<br><br>AND RELATED THIRD PARTY ACTIONS | CV 02-2373 SVW (FMOx)<br><br>ORDER GRANTING PLAINTIFFS REASONABLE ATTORNEYS' FEES AND COSTS IN THE AMOUNT OF $168,886.76<br>[252] |

ENTERED
CLERK, U.S DISTRICT COURT
AUG 1 6 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

## I.  INTRODUCTION

Plaintiffs Elizabeth Bancroft and Joyanna Wendt ("Plaintiffs") initiated the instant action, alleging that the Kodak Theatre in Los Angeles failed to provide full and equal access to patrons with disabilities ("Principal ADA Action"). Plaintiffs allege violations of the Americans with Disabilities Act, 42 U.S.C. § 1281 et seq., as well as state law claims for discrimination on the basis of disability and unfair business practices. The defendants in the Principal ADA action were TrizecHahn Corporation and TreizecHahn Hollywood LLC

1 (collectively, "Former Owners"); CIM/H&H Retail, L.P. ("CIM" or
2 "Current Owner"); and Anshutz Entertainment Group, Inc., the Anshutz
3 Corporation, and L.A. Venue Management, LLC (collectively, "Former
4 Operators"). In response, TrizecHahn Hollywood LLC filed a third
5 party complaint asserting breach of contract and indemnity claims
6 against professionals who were allegedly responsible for building the
7 Kodak Theater in violation of disability laws: Theater Project
8 Consultants, Rolf Jenson & Associates, Inc., Altoon & Porter
9 Architects, Hakomori & Tang Architecture, and Rockwell Architecture
10 Planning and Design (collectively, "Third Party Defendants"). CIM,
11 which subsequently acquired the Kodak Theater from TrizecHahn
12 Hollywood LLC, became the assignee of the third party claims and filed
13 another complaint against the Third Party Defendants. The Principal
14 ADA Action has been settled among the Plaintiffs, the Former Owners,
15 the Present Owners, and the Former Operators. The Court declined to
16 exercise supplemental jurisdiction over TrizecHahn Hollywood LLC and
17 CIM's third party claims.

18 Plaintiffs now move for the award of fees and costs in the amount
19 of $201,073.19. Defendants and Third Party Defendants oppose the
20 motion. They do not dispute that Plaintiffs are entitled to
21 attorney's fees, but argue that the amount requested is excessive.
22 Defendants suggest $109,530.15 as the appropriate award.

23 For the reasons stated below, the Court will GRANT Plaintiffs
24 attorney's fees in the amount of $168,886.76.
25 /
26 /
27 /
28 /

## II. DISCUSSION

### A. Legal Standard

Under the Americans With Disabilities Act, the Court has discretion to award the prevailing party reasonable attorney's fees, including litigation expenses and costs. 42 U.S.C. § 12205; Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002). California law also provides for the discretionary award of attorney's fees. Cal. Civ. Code § 52(a) (attorney's fees for Unruh Civil Rights Act); Cal. Civ Code § 55 (attorneys' fees for Disabled Person Act). A prevailing plaintiff should ordinarily recover attorney's fees unless special circumstances would render such an award unjust. Barrios, 277 F.3d at 1134.

"A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000). The legal relationship is altered where the parties enter into a settlement agreement favorable to the plaintiff, such that the plaintiff can force the defendant to take some action he otherwise would have no obligation to perform. Id. Here, the parties have entered into a binding settlement agreement that requires modifications to the Kodak Theatre to improve accessibility for disabled patrons. Accordingly, Plaintiffs qualify as the prevailing party.

To determine reasonable attorney's fees, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This is called the "lodestar" method. The fee applicant must

submit evidence of the hours worked and the rates claimed. Id. Once the fee applicant has done so, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992). All hours that are not reasonably expended, or that are excessive or redundant, should be excluded. Hensely, 461 U.S. at 434.

B. The Requested Rates

Reasonable attorney's fees are assessed at the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895 (1984). In determining prevailing rates, courts require

> the prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

Id. at 896 n.11. Public interest attorneys who normally do not charge for their services are still entitled to the prevailing market rate. Id. at 895.

Plaintiffs were represented by the Disability Rights Legal Center ("DRLC"), a non-profit organization based in Los Angeles. Seven attorneys worked on Plaintiffs' case. Plaintiffs seek a rate of $440 per hour for lead attorney Paula Pearlman, who is Deputy Director of

4

Advocacy Projects at the DRLC and Adjunct Professor of Law at Loyola Law School. She has over twenty years of experience in public interest litigation, having handled cases involving immigration, employment discrimination, gender discrimination, and civil rights. (See Pearlman Decl. at ¶ 73.) Plaintiffs further request a rate of $420 per hour for Eve Hill, who serves as Executive Director at the DRLC and teaches disability rights law at Loyola Law School and the University of Southern California School of Law. (Id. at ¶ 74; Lawrence Decl. at ¶ 6.) As for the remaining attorneys, Plaintiffs request a rate of $300 per hour for Chris Knauf, who graduated from the University of Southern California Law School in 1996; $290 per hour for Carolyn Young, a 1997 graduate of UCLA Law School; $280 per hour for Shawna Parks, a 1999 graduate of Boalt Hall School of Law and currently Litigation Director at the DRLA; $240 per hour for Monesha Coelho, a foreign-trained attorney who has practiced in the United States since 2000; and $220 per hour for Jennifer Lee, who graduated from Loyola Law School in 2004. Plaintiffs have submitted declarations from local attorneys and from an attorney's fee expert showing that the requested rates match the prevailing market rates in Los Angeles for private attorneys with similar levels of experience. For example, between 2001 and 2003 large California law firms generally charged between $400 and $500 per hour for attorneys with 15 or more experience. (Pearl Decl. at 7-20.) See Guam Soc'y of Obstetricians and Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir. 1996) ("declarations of the 'prevailing market rate in the relevant community...[are] sufficient to establish the appropriate [billing] rate for lodestar purposes.'" (quoting Davis v. City and County of San Francisco 976 F.2d 1536, 1547 (9th Cir. 1992))).

Defendants argue that the rates requested for Pearlman and Hill are unreasonable because they are commensurate with rates charged for senior partners and associates by large law firms that have greater resources than the DRLC. However, the Ninth Circuit has upheld the award of "big firm" rates to public interest organizations. Guam, 100 F.3d at 702. See also Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 408-409 (2d Cir. 1987) (although a district court has discretion in setting the rates for pubic interest attorneys, "the discretion must be exercised on the basis of rates charged to clients of private law firms.") Given that Pearlman and Hill are highly experienced attorneys and experts in disability law, it is not unreasonable for them to charge rates commensurate with that charged by large law firms.

The parties vigorously dispute whether the rates have been inflated since February 2005. The dispute centers on a letter sent by Plaintiffs' counsel Pearlman to Defendants' counsel in connection with settlement negotiations. (Earle Decl. Ex. E.) In the letter, Pearlman disputed Defendants' view that responsibility for the violations lied solely with Third Party Defendants, and stated that Plaintiffs would file a motion for summary judgment if no settlement was reached in February 2005. Plaintiffs also attached two "timekeeper summaries" that broke down the attorney's fees incurred to that point by rates and hours billed. One summary described a total fee amount of $114,815, but the other "revised" summary set the total at $84,852.83. In both summaries, the billing rates were substantially lower than what Plaintiffs now charge. For example, Pearlman's rate was $350 in the letter, $90 below the $440 rate she now requests. Defendants argue that the rates have been inflated

without cause, and suggests that the requested fee award should be reduced by $24,108 to reflect the February 2005 rates. Plaintiffs rejoin that the rates proposed in February 2005 were discounted for settlement purposes, and settlement proposals should not be held against them now that the parties failed to reach agreement on attorney's fees. (Pearlman Reply Decl. at 2.)

So long as Plaintiffs' requested rates are commensurate with prevailing rates at the time the work was performed - which they are - the rates are not unreasonable even if they depart from rates proposed in earlier settlement offers. Moreover, the Court may either apply the current prevailing rate to compensate for the delay in payment, or add a prime rate enhancement to the historical rate. See Chem. Bank v. City of Seattle, 19 F.3d 1291, 1305 (9th Cir. 1994). Although Plaintiffs have not requested a prime rate enhancement, the delay in payment is another ground supporting the Court's conclusion that the requested rates are reasonable.

### C. Law Clerks

In addition to fees for their attorneys, Plaintiffs also request fees for law clerks at a rate of $90 per hour. Defendants argue that Plaintiffs may not recover fees for law clerks because the law clerks were presumably student volunteers, and because their work required supervision. The argument is not persuasive. The Supreme Court has held that a fee award under the Civil Rights Attorney's Fee Award Act should include compensation for the services of paralegals and law clerks if the custom is not to cover services in the hourly rates of attorneys. Missouri v. Jenkins, 491 U.S. 274, 286-287 (1989). As the Supreme Court explained, "by encouraging the use of lower cost

paralegals rather than attorneys whenever possible, permitting market rate billing of paralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." Id. at 288. It is irrelevant whether the paralegals or law clerks were paid staff or unpaid volunteers. In Skinner v. Uphoff, 324 F. Supp. 2d 1278, 1285 (D. Wyo. 2004), the court permitted recovery of fees for an unpaid law student intern, because it saved the defendants from being charged at the higher rates of an attorney. There is no reason to think that the same rationale does not apply to the instant ADA action.

### D. The Hours Billed

Plaintiffs have submitted detailed billing records documenting the hours work and tasks performed in the Principal ADA Action. (Pearlman Decl. Ex. P.) Plaintiffs have recorded a total of 653.85 hours. The burden is on Defendants to submit evidence to rebut Plaintiffs' showing. Deukmejian, 987 F.2d at 1397-98.

#### 1. Discrepancies From 2005 Documents

Defendants contend that Plaintiffs have inflated their hours from two billing documents generated in 2005. First, Defendants point out that the February 2005 letter asserted a "revised" hours total of 331.30. Defendants argue that Plaintiffs' final total of 591.5 hours, which excludes hours for the instant motion, is too great a departure from 331.30 to be justified by the work done between February 2005 and January 2006, particularly given that the case was essentially settled early in 2005. However, as Plaintiffs point out, the "revised" hours

described in the February 2005 letter had been reduced for purposes of settlement negotiations. In fact, the letter also recorded 583.7 in non-revised hours. There has been little, if any, inflation.[1]

Second, Defendants point out that the final billing records contained more entries for nine days[2] in April and May 2005 than what a billing invoice generated in May 2005 had reported. Defendants believe that Plaintiffs' counsel may have retroactively manufactured entries to inflate the fee award, which Plaintiffs vigorously deny. Pearlman explains in her affidavit that the May 2005 invoice was also generated for purposes of settlement, and was sent before all billing entries were recorded in the computer system to expedite the settlement negotiations.[3] (Pearlman Decl. at 5.) The Court has not reason to doubt Pearlman's explanation. Moreover, having reviewed the entries for the eight disputed days, the Court finds that the hours and tasks - which included work on a stipulation for the Court, consultations with a ADA compliance expert, and conferences with clients and attorneys - to be reasonable.

---

[1] Plaintiffs also state that they had worked about 70 hours after February 2005, but declined to bill them.

[2] The dates were April 22, 23, 25, 28, 29, and May 2, 3, and 4, 2005.

[3] DRLC's attorneys generally keep track of time contemporaneously in writing before time entries are inputted into the computer system by staff or volunteers. (Pearlman Reply Decl. at 5.) Given the limited resources of the DRLC, it may take as much as a month for entries to be recorded into the computer system. (Id.) According to Pearlman, "in an effort to move the [settlement] process along and to compromise, I was willing to forgo waiting for the additional time to be entered, and simply submitted to Defendants what we had in the system at that time." (Id.)

### 2. The Staffing Model

Defendants argue that Plaintiffs used an inefficient staffing model because Pearlman, the most experienced and expensive attorney on the case, provided the majority of the services. Defendants maintain that the fees should be reduced because work was not delegated to less costly attorneys. However, such a "small shop" staffing model is not per se unreasonable. Lopez v. San Francisco Unified Sch. Dist., 385 F. Supp. 2d 981, 991 (N.D. Cal. 2005) (awarding $460 per hour to the attorney who accounted for the largest number of hours billed). Moreover, Defendants have submitted no evidence identifying any task performed by Pearlman that is more suited to a less experienced attorney.

### 3. Conferences

Defendants also argue that billing for the time of both law clerks and attorneys for meetings or conferences constitute doubling billing. Case law teaches otherwise. See Baker v. John Morrell & Co., 263 F. Supp. 2d 1161, 1196-97 (N.D. Iowa 2003) ("the court flatly rejects the defendant's assertion that counsels' billing for time spent in conference with staff is unreasonable," and approved "counsels' entries for time spent in consultation with one another . . . .") Further, the time billed for conferencing is not unreasonable considering that Plaintiffs have taken an across-the-board 5% reduction to reflect possible inefficiencies in billing.

/

/

4.  *Site Inspections*

Defendants point out occasions where multiple attorneys billed for attending site inspections, even though presumably only one or two attorneys were needed. The Court agrees that such billings are unnecessary. Accordingly, the Court will reduce the requested fees by $2,262, for site inspections conducted by attorneys other than Pearlman and Hill on March 4, 2002 ($1,032), September 7, 2002 ($450), and October 30, 2002 ($780).

5.  *The Summary Judgment Motion*

Defendants contend that the Court should reduce the hours billed by Plaintiffs' counsel for preparing its motion for summary judgment. First, Defendants argue the hours were unreasonable because the nearly 50 hours billed in 2003 for preparing a summary judgment motion did not immediately lead to an actual filing. Moreover, Defendants maintain that the 30.5 hours billed for the summary judgment motion in 2005 were unnecessary because the same work was already done in the 2003 motion. However, Defendants have presented no evidence that the hours spent in 2003 and 2005 were duplicative; even if Plaintiffs began work on the motion in 2003, additional hours may have been necessary to complete it in 2005. And the combined 80 hours billed doo not seem excessive for preparing a dispositive motion.

Defendants also argue that the hours spent on the summary judgment motion should be excluded because, even though the parties settled before the Court ruled on the motion, the motion would have failed had it been ruled on the merits. The argument is unavailing. Regardless of the motion's likelihood of success, Plaintiffs' counsel spent considerable time and effort on a motion that was essential to

their case, and it might well have contributed to the ultimate settlement between the parties. The Court cannot conclude, on the basis of the current record, that it was unreasonable for Plaintiffs to file the motion.

### 6. The Emotional Distress Claim

Defendants argue that because Plaintiffs settled their emotional distress claim with Anschutz Entertainment Group ("AEG") and then Plaintiffs withdrew the emotional distress claims against the remaining Defendants, Plaintiffs' counsel's award should be reduced by $25,000. Defendants offer no explanation of how they arrived at the $25,000 figure.

Where the prevailing party has received substantial relief, the prevailing attorney should recover a "fully compensatory fee" which will encompass all hours reasonably expended on the litigation. See Hensley 461 U.S. at 435. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. If all claims made by the Plaintiffs depended on the same set of factual circumstances then Plaintiffs' counsel should recover attorneys' fees for all hours reasonably expended during the litigation. See Borrow v. Greenville Indep. Sch. Dist. of Texas, 2005 U.S. Dist. LEXIS 34557, at *47-48 (N.D. Texas Dec. 20, 2005). In Borrow, the court held that the prevailing plaintiff could recover attorney's fees for a Title XII cause of action that had been dismissed because it arose out of the same set of factual circumstances as his other claims. Id. at 48. In the instant case, the emotional distress claim was asserted on the basis of the same factual circumstances as the ADA claim. Pleading

emotional distress is unlikely to have increased Plaintiffs' costs or effort in any substantial way. The Court will not reduce the fee award simply because Plaintiffs ultimately decided to withdraw the emotional distress claim.

### 7. *The Fees Motion*

Defendant argues that the amount of time that Plaintiffs' counsel spent preparing for this motion is unreasonable. The DRLC spent 89.6 hours preparing for this motion. 43.6 of those hours were for work performed by law clerks. Defendants seek to exclude all hours spent by law clerks and attorney Shawna Parks because, in their view, the hours were used for training. However, Defendants have submitted no evidence that the hours were used for training rather than to prepare the motion. Given that the fees motion seems to have been carefully prepared and was supported by detailed documentation, the hours billed do not appear to be unreasonable.

### E. Multiplier

Where a plaintiff prevails under both state and federal claims, and where state law permits the award of a multiplier, a federal court may award a multiplier even if such an upward adjustment is not available for the federal claim. Mangold v. California Pub. Util. Comm'n, et al., 67 F.3d 1470, 1478 (9th Cir. 1995). Under California's "private attorney general" doctrine, a trial court may apply a multiplier to an award of attorneys fees at its discretion. See Downey Cares v. Downey Cmty. Dev. Comm'n., 196 Cal. App. 3d 983, 994 (1987). The Court should consider the following factors in determining whether to award a multiplier: (1) the novelty or

difficulty of the questions involved, and the skill displayed in presenting them, (2) the extent to which the nature of the litigation precluded other litigation of the attorneys, and (3) the contingent nature of the fee award. Serrano v. Priest, 20 Cal. 3d 25, 49 (1977).

Plaintiffs' counsel argues that this case involved complex issues of law which entitles them to a multiplier of 1.2. While disability rights may be a complex area of law, Plaintiffs counsel have not established that there was a novel issue involved or that the case was particularly difficult. Nor have Plaintiffs shown that counsel used skill above and beyond what is normally expected of attorneys with their level of experience. See Weeks v. Baker & McKenzie, 63 Cal. App. 4th 1128, 1176 (1998).

Plaintiffs also argue that they are entitled to a multiplier because of the contingent risk of the litigation. However, to justify the application of a multiplier, the contingent risk must be beyond the risk of not prevailing in the action. Id. at 1175. Here, because the prevailing party is ordinarily entitled to attorney's fees under federal law unless "special circumstances would render such an award unjust," there is little risk that counsel would be uncompensated if Plaintiffs prevail. See Barrios, 277 F.3d at 1134 (quotation marks and citation omitted).

Lastly, Plaintiffs argue that a multiplier is justified because counsel had to turn down other work for handling this case. But Plaintiffs have not provided any specific examples for work they turned away. In any event, the hours they spent on this case will be compensated.

The Court declines to award the requested multiplier.

III. CONCLUSION

The Court will grant Plaintiffs $149,622.15 in merit fees as Plaintiffs requested, plus $13,779.00 for the fees motion, $7,747.61 in costs, plus $2,262 for unnecessary site visits. The total fee award is $168,886.76.

IT IS SO ORDERED.

DATED: 8/9/06

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE